All right, we'll call the next case. Case number 21-60875, Tobar v. Garland. All right, we're ready. Mr. Miller for Tobar. May it please the Court. I am Ross Miller, and along with my co-counsel, Ezene Okoko, I represent the petitioner in this case, Maria Cristina Tobar, also known as Guadalupe Tobar. Your Honors, the petitioner respectfully requests that this Court reverse the agency's denial of her application for temporary protective status for two reasons. First, because the agency committed legal error in finding that an absence from the United States for more than 90 days could not be considered brief in duration. And second, because the agency also committed legal error in finding that petitioner's absence... Did the Court say that? Did they say it could not be considered brief if it exceeded 90 days? Your Honor... Or was it a decision that they applied the 90-day rule in judging the 111 days? Your Honor, petitioner's position is that the agency applied a more than 90-days departure bar to her absence to find that it could not be considered brief, casual, or innocent. And the reasoning is that the immigration judge specifically cited to the statutory bar, which governs cancellation of removals... So you're alleging that that is a legal error on his part? Absolutely, Your Honor. We're alleging that it is a legal error. I thought the cite was as a guide, not saying that that was an applicable statute here, but just that that's a guide for what is long. Well, certainly, Your Honor, but the guide, again, is a statutory bar. And in the cancellation of removal context, any absence of more than 90 days breaks continuous physical presence. There is no exception. There is no case-by-case analysis. The purpose of the departure is irrelevant. But we don't know, do we, whether he actually applied that as a matter of law or as a matter of just, as Judge Haynes said, just a guide to determine whether this particular absence didn't satisfy the statute? Well, Your Honor, our position is that it was applied as a legal bar, and the reason is because there's no qualifying language whatsoever in the agency's decision. The immigration judge simply says the applicant was outside of the United States for more than 90 days, and the agency further went on to say, we know that more than 90 days is a long period of time because it's a bar for establishing continuous physical presence in the cancellation of removal context. So what does that mean as far as your case is concerned, that we should remand it for it to exercise its own discretion and not be guided by the bar? What is your position on that? Yes, Your Honor. Our position is that the case must be remanded back to the agency for the agency to conduct a proper case-by-case analysis. Again, there is no qualifying language whatsoever in the agency's decision. The agency didn't say more than 90 days is too long in the context of an applicant visiting and caring for a sick, dying parent. It didn't say more than 90 days is too long in the context of visiting. Well, I mean, the way to read it is it did say that, didn't it? And 111 days, and it said that it was excessive. I mean, it made that judgment, didn't it? But again, there was no case-by-case analysis, Your Honor. The agency didn't find 111 days was too long to visit and care for a sick, dying parent. The agency had no qualifying language whatsoever. Instead, it simply said more than 90 days is too long, and according to the agency, we're supposed to know this because in the cancellation of removal context, more than 90 days breaks continuous physical presence. But, Your Honors, this clearly violates congressional intent. And this is so because the precursor to cancellation of removal, which was suspension of deportation, also had a brief, casual, innocent safe harbor provision, whereby applicants who are able to avail themselves to that provision do not disrupt continuous physical presence. Now, when Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and it replaced suspension of deportation with cancellation of removal, it expressly declined to extend the brief, casual, innocent safe harbor provision to this new form of permanent relief. But Congress didn't remove the brief, casual, and innocent safe harbor provision from the temporary protected status statute. And we know Congress certainly is aware and capable of enacting a more than 90 days departure bar because, again, it did so in the cancellation of removal context. Congress has never extended that statutory bar. Does your argument that the immigration judge erred require you now to justify that 111 days under these circumstances was not excessive? No, Your Honor. Our position is that the agency committed legal error by failing to conduct the case-by-case analysis whereby Petitioner could have— Well, then that puts some burden on you to explain why 111 days is not excessive? Certainly, Your Honor. Okay. And have you done that? I mean, are you prepared to do that? Yes, Your Honor. We believe that if the agency had have conducted the proper case-by-case analysis, Petitioner could have demonstrated that her absence was indeed brief and that it should have been considered short in duration. And in support of this proposition, Petitioner cites to INS v. D. Oliveira, a 1994 case from the Central District of California. There— Was the district—was the immigration judge wrong to take into account the fact that she had been 18 years before she had seen her father and that he—that she misrepresented the facts when she said he died immediately after she left when apparently he didn't die until two years later? Was she entitled to consider that in determining whether her— and how her absence should be judged? Your Honor, the court absolutely could have considered those facts in rendering the decision that her absence couldn't be brief in duration, but the immigration judge didn't consider those facts as they relate to whether or not the absence was in fact brief. Instead, at the very end, the last paragraph of the judge's decision, the judge notes, this isn't an emergency. The purpose of the trip wasn't for an emergency, since Petitioner's father had unfortunately been sick with liver cancer, as you noted, from 2002 on, and because the letter that she submitted from her doctor demonstrated that in fact her father, Mr. Sibian, passed away approximately two years after she returned to the United States. But that exception, the emergency exception, that only applies to preserving continuous residence in the United States for purposes of a grant of temporary protected status. When you look at the judge's decision, the immigration court's decision finding that her absence couldn't be brief, the court mentioned none of those facts. In fact, the court didn't rely on any facts whatsoever. Well, the IJ found that the absence was not casual because she quit her job before departing. That's correct, Your Honor. In a separate paragraph, the court finds that the departure also could not be casual because she resigned from her job prior to returning to her country of origin. But Petitioner also maintains that the court committed legal error in reaching this finding as well. Indeed, the regulations which govern temporary protected status' brief, casual, and innocent departure  where the absence is short in duration and reasonably calculated to accomplish the purpose of the absence. So some level of planning obviously is permissible under the agency's own regulations. And in the case of Barr, Petitioner did inform the court that she resigned from her place of employment as a welder at the Air Coil Company prior to returning to El Salvador because she didn't know when she would be back to work. But, Your Honors, the evidence also demonstrates, number one, that Petitioner made $350 a week in this low-wage job and that she understood when she returned to El Salvador and that when she came back to America, she would be doing so without authorization from U.S. immigration authorities. So our position is that any responsible employee in Petitioner's situation would have resigned as a courtesy to her employer because she didn't know when she would be able to return to work. Well, but this sounds really factual. And the fact is we have to defer to I.J.'s findings of fact. And so if she has to show brief, casual, and innocent, and the I.J. found not casual without focusing on that 90-day statute but just, you know, having quit your job and all that, it's not casual, you're going for something much more permanent, then why do we not defer to that conclusion? Your Honor, this Court shouldn't defer to that conclusion because it's not a reasonable interpretation of the statute or the implementing regulations. But why isn't it a reasonable interpretation of the facts? I mean, we're not supposed to assess the facts. It's not a reasonable interpretation of the statute or the regulations because the statute permits a level of planning in order to accomplish the purpose of the absence. And, Your Honors, I would note every country that currently designates temporary protected status doesn't share a border with the United States. So any applicant who leaves the United States to return to their country of origin, a TPS-designated country, would necessarily have to engage in a level of planning in order to accomplish the purpose of that trip. And that, Your Honor, is why the agency's interpretation regarding the casual nature of her absence, it's not reasonable and shouldn't be entitled to any deference. Moreover, even if... I mean, is there anything in the record in which she attempts to justify 111 days as associated with the reason that she went? Yes, Your Honor. I believe it's page 99 of the record. It actually demonstrates that after Petitioner returned to El Salvador, unfortunately, Mr. Sivian's condition continued to worsen, and Petitioner's mother requested that Petitioner remain in El Salvador to help ambulate Mr. Sivian around their residence. Petitioner's mother wasn't able to physically move him around the home, and so she stayed beyond that period to help. And how does that fit within the definition of casual? If she goes for a specific purpose of attending or following, it seems like that's an intended visit with unlimited time restraints. Well, Your Honor, respectfully, Petitioner would disagree. What that demonstrates is that this absence was not intended to be as long in duration as it was. Instead, Petitioner... And the record also shows when Petitioner left the United States, she was accompanied by her two young U.S. citizen daughters, Jocelyn and Maylynn. They were 15 and 11 years old at the time. And Petitioner actually returned them to the United States just two weeks after she left America to go to El Salvador, which demonstrates that Petitioner didn't intend to be outside of her country for the full 111 days. How should we treat... If we concluded it was not casual because she stayed long, and your argument is she changed her intent because she got down there and had to take care of her father, how do we treat that, where it turns out to be not casual? It seems to me that didn't work in your favor. Well, Your Honor, we believe that these facts don't disturb the reality that her absence was indeed casual. She only stayed beyond the two weeks that her daughters accompanied her because of circumstances beyond her control. And as Petitioner cites in her brief to INS v. D'Oliviera, that 1994 case from the Central District of California, when a noncitizen is forced to travel abroad in order to care for a sick parent, for instance, if there are circumstances beyond the noncitizen's control, that has to factor into the brief, casual, and innocent absence analysis. Well, I could see, oh, a pandemic hit and you're not allowed to leave. That's a circumstance behind your control. But there was no indication here that she was unable to leave due to no airplanes or the city was shut down and not letting her leave or whatever. Well, Your Honor, the record shows that not only did her mother ask Petitioner to remain in El Salvador because she wasn't able to help ambulate Mr. Sibion on her own, it also demonstrates that Petitioner doesn't have any siblings in El Salvador. Petitioner's mother was essentially alone with Mr. Sibion, an elderly gentleman who was very sick from liver cancer. And this circumstance... It seems to me that that is not an argument in your favor. It's an argument against your position that it was casual. I mean, it became intentional for a purpose of assisting someone until his death, and that would take it out of the period that would be forgiven. Well, Your Honor, Petitioner would disagree. The initial purpose of the absence, again, was to visit her father, a man she hadn't seen in almost 20 years, because he reached out to Petitioner in 2015 and told her he believed he was nearing the end of his life and that he wanted to see his daughter one last time. It wasn't until after she got to El Salvador and she saw Mr. Sibion's serious condition and after her mother asked her to remain for a little bit longer that Petitioner did, in fact, stay in El Salvador, again, beyond the two weeks that her daughters remained there. And under INS v. de Oliveira, this factual scenario demonstrates that Petitioner didn't intend to permanently... Is that your best case? Your Honor, yes. I would say INS v. de Oliveira is our best case. Unfortunately, as the government has even pointed out, there's not a whole lot of authority on this particular case. That's because this is highly factual, and the I.J. really was kind of questioning this notion of having to stay longer because, you know, he's about to die when he lived another two years and all of that. Now, I understand I might have seen it differently if I was the I.J., but that isn't our question as we sit here on the Fifth Circuit. We have to defer to fact findings absent, you know, that it was unreasonable. And why is this an unreasonable fact finding? Well, first, regarding the brief absence aspect, it is unreasonable because it's a purely factual analysis that the immigration judge conducted. The judge cites to no facts beyond the reality that Petitioner was outside America beyond 90 days. Regarding... Your Honor, as I see my... Well, the job quitting, the fact that the death was not when she said it was, and so on, that was all discussed. I see my time has expired. May I briefly respond? Your Honor, we believe that it's not entitled to any type of deference again because the statute and the regulations don't bar any type of planning as regards the travel prior to the departure. And because of that, this singular fact that the immigration court relied upon to find the agency... You have not addressed the standard of review, which to me seems essential to deciding this case. You can do that on rebuttal, but be prepared to do it on rebuttal. Yes, Your Honor. Thank you. Thank you. And you saved time for rebuttal, but deferred that to your colleague. All right. All right. You may proceed. May it please the Court? Andrew O'Malley. My name is Andrew O'Malley. I represent the Attorney General of the United States. The Court should deny the petition for review because substantial evidence supports the agency's decision that Petitioner's 111-day absence from the United States was not bereaved, casual, or innocent. And I'll start with a standard overview. I think just to reiterate that the substantial evidence standard is the standard to apply here. This is a factual determination that requires the Court to engage with the facts of the case. Why wouldn't the standard of review be de novo with respect for the immigration judge or the BIA to determine whether it was a plausible, reasonable decision and not clearly erroneous? I mean, that seems to me that it is de novo. We determine whether he made a legal error. And then, if it's an ambiguous determination, do we defer to his determination of the standard of review? I'm sorry. I'm not sure I understand your question. Do you defer to the Board's standard of review, as in did the Board review this determination de novo? Yeah, the determination. I mean, obviously, he interpreted his own regulations for the casual and accommodating the particular need for the departure. And we reserve that de novo. And then, if the regulation, which is ambiguous, because you can't put any kind of meaning on those particular terms, then we give the de novo review the respect of the district court, as long as it's not, I mean, of the immigration judge or the BIA, as long as it is not implausible or unreasonable or clearly erroneous. I think we could strip it down to the very basic level and build it up. So we start with, I think the place we have to start is with the Supreme Court's decision in U.S. Bank, which tells us that if the analysis is primarily factual in a mixed question of fact or law, which this seems like it would be, right, it would be the application of these facts, which are, I will note at the outset, are disputed and not established. So if we say it's a mixed question of fact or law, we start with U.S. Bank as to whether or not it's primarily factual, in which case there's deference. And then we have to look at U.S. Bank as basically a guidepost, because even as the Supreme Court recognized in Guerrero-Esprilla, it doesn't account for the fact that this is administrative law and not just administrative law but immigration law, where the court owes deference to the agency in general, but in matters of immigration, the executive is provided with particular deference. But we do have a regulation that he has applied to these facts. That's true, and it's sort of an indeterminate standard, right? It's a case-by-case basis to give color to what that standard means, and the agency is entitled to do that. And that determination is primarily factual. We see this in the way that the standard for past persecution has been handled as a mixed question of fact or law around the circuits, too, where historically that determination and that standard is given its meaning through case-by-case adjudication, and that's a factual determination. And this is the same thing here. How do you review the factual determination? Whether substantial evidence supports the factual determination? That's exactly right. I'm sorry, Your Honor. I was just going to say, you start with a regulation that is promulgated by the agency. Right. That is the law. That's correct. Right. The law is ambiguous. True. So you view that law and the application of that law as to whether it is plainly erroneous and not inconsistent with other regulations or law. No, I think that regulation is entitled to hour deference, as it says. That's what I mean. Because it is ambiguous. Well, it's certainly not defined, but it gets defined through case-by-case adjudication, just like any other standard. It's the agency that has to do the work with the facts of the case, weighing the evidence, weighing the credibility of the evidence and the sufficiency of the evidence, and then doing what judges do, which is make a judgment. I just have to say I think it's very odd that this case was decided on this basis as opposed to the alternative ground that the I.J. found of the lie of how she got the TPS in the first place, pretending to be her sister. The BIA didn't address that, so we can't. But I'm just confused. Like, why are we on this fact question when we should be on this legal point that I don't think is disputed? I can't say I disagree with you, Your Honor. Okay. But I am balanced. So if we were to remand, then the BIA could simply affirm on the I.J. alternative ground, which is the lie. Absolutely, Your Honor. But I am balanced. Back to the hour matter. That's correct. Is that the proper standard to apply if we conclude that it is an ambiguous regulation, defer to the BIA's construction of their own regulation? In this case, I think that's one way to go about getting the deference to get to the deference, and you have to apply deference to the agency's adjudication of that standard on a case-by-case basis. But again, I think this is a primarily factual determination, and if we look at U.S. Bank, then I think we have to get back to what the standard is under the INA, which is really the substantial evidence. Was... Oh, go ahead. And I guess I'd be surprised if you disagreed with me if I said under either standard, she doesn't pervade. That's true, Your Honor. Our deference or substantial evidence. That's absolutely right, Your Honor. And I'm not saying that's my view. I'm saying... That's correct. If either one we applied. That's correct. And this is a thorny issue, and I absolutely recognize it. The mixed question of fact of law and what standard of review applies is broadly disputed across the circuits, and I know that. We think it's a substantial evidence standard going back to U.S. Bank. I would like to note, though, that the facts are in dispute. I'd like to note, for example, this reliance on the idea that she went back to El Salvador and her mother asked her to stay and take care of her father. That's not in the record. She doesn't say that. She says she went back to El Salvador and her mother was having trouble carrying her father around, but there's nothing in there that says that... It doesn't make it any different. It does if it's a mixed question of fact or law or stated properly. The fact that she made that excuse for 111 days, I mean, it seems like that, nevertheless, does not satisfy the requirement. That's true, and that gets back to, again, she doesn't make it under any standard. Well, and so I want to understand, is there anything in the record that shows that the I.J. was using this as something other than guidance, this 90 days, in other words, as a requirement? If it's 90 days, we're done, we're out of here. 91 days, get out of here. Was there any indication that that's how the I.J. was acting, or was the I.J. just trying to find out, like when we're talking about a long time, what does long mean? Well, over here it means 90, so let me use that as kind of a guide. First, I would acknowledge that that's a question of law, that the court can refute it, right? But, yes, the immigration judge specifically says, I'm looking as guidance to this cancellation of removal provision. Well, the question of law is if they plied the law wrong, that's something to look at, but it seemed to me that the I.J. was just using that as, like, what's long? I mean... That's right. Sometimes two minutes is long. That's right. And sometimes, you know, 10 years is short. So trying to find something to put you in the right cubby, that's what I understood the I.J. was trying to do. But the I.J. did not say 111 days would always be a violation or not casual and brief. It has to be the case-by-case. I'm sorry to talk over you, but I absolutely agree with you. The immigration judge says, I'm looking to this for guidance. I would also note that the board did not rely on that. They affirmed the decision. They did not repeat that standard or say that this is a per se rule that we are now applying to temporary protected status. Did the judge say specifically that he was just looking to the rule for guidance? Yes, Your Honor. I can actually, if I can pull up the I.J.'s decision, I'd be happy to. That's okay. I mean, just express that in terms of specific terms. It very specifically says, I'm looking to this for guidance. This is what we say in cancellation of removal, which, of course, post-states the former rule, which they made more stringent with IRERA, and we're looking at now. That makes sense to look just for guidance because the purpose of those 1996 amendments, when this all changed, was to make things more difficult and to make relief more difficult. I would be remiss if I didn't note my 28-J letter from last Wednesday, relying on Patel and 1252A2B2. I know that this is a last-minute raising of an argument, and I apologize to the court and I apologize to opposing counsel, but this is an argument that we are just getting around to in my office by way of explanation. We think that the reasoning of Patel stripping jurisdiction and construing 1252A2B1 to all determinations in discretionary bases for relief, including factual determinations as to eligibility, applies with equal force to B2. The language is the same. That provision has been construed as a companion provision and a catch-all provision, and, again, it uses the same similar language. So we think that it encompasses all decisions made in the course of granting or denying discretionary matters. Again, I don't think it matters in this case. I think that we win no matter how the court looks at it. Just to summarize, substantial evidence is the standard to apply here. The immigration judge did not apply a per se rule, and there was no legal error there. If there are no questions, I'll yield my time back.  Thank you very much, Your Honor. We'll now hear rebuttal from Ms. Okoko. May it please the Court, I am Izania Okoko, I, too, represent the petitioner, Maria Christina Tova. Your Honor, the government's arguments for affirmance fail for two reasons. First, Congress never intended to apply cancellation of removal's bar to a temporary protected status like the agency did in this case. And, second, the record supports the conclusion the petitioner's absence to care for her sick parent was short and casual. First, I will address the government's issue of the application of Patel to this case, and it is not applicable because the jurisdiction stripping provisions in Section 1252 do not apply to questions of law and constitutional claims. This Court very recently decided the case of Agala Chapa v. Galland, and reviewable questions of law include the application of a legal standard to undisputed facts. In this case, the facts are not in dispute. Petitioner was absent for 111 days, and she was caring for her sick parent. So the issue is the application of the statute and the implementing regulations to the undisputed facts. Well, she did misstate her father's passing. Well, the record shows that. However, Your Honor, the passing of her father is not really a deciding factor in whether— Well, the IJ was looking at did she really need to stay this long, and so that was part of it. The notion that, oh, my gosh, I've got to handle my dad who's about to die is a little bit set back by the fact that he didn't die a week later. He died two years later. And again, I'm not being disrespectful. I'm glad he lived another two years, but the point being that was addressed by the IJ, that is factual. That isn't for us to decide. I understand that, Your Honor. But that was not the basis of the immigration judge's decision. The judge said because she had remained outside for a period in excess of 90 days, barring the cancellation of removal's guidance, it was excessive. Well, I already read, again, what the IJ said. It said it wasn't casual because she quit her job before she ever went out there. There wasn't really this emergency that she claimed because, you know, again, like I said, if you went to El Salvador on March 10, 2020, guess what? You're not coming back for a while because the pandemic hit and everything shut down and, oh, my gosh, no planes, no this, no that. That would be something that you would say, you know, she couldn't have returned, and it would be hard to argue that she, you know, that that was improper or whatever. So I guess I'm a little bit struggling with the notion that there were no factual determinations for the IJ to make here. Well, Your Honor, the IJ did specifically state that, I already read that, again, this court will use this to show that a significant period, to show that this is a significant period of time, referring to cancellation of removal, because it is more than 90 days outside of the United States. The court did not say and her father leaved for another two years. So the IJ was not basing this on her father's death but basing this on the time. But that was in the discussion. I mean, the IJ did talk about the fact that he didn't die until two years later. Yes, the IJ mentioned this later towards the end, trying to explain that it was not an emergency. But, Your Honor, that exception for emergencies has to do with continuous residence and not continuous physical presence. I feel like the IJ might have mixed both up. However, the brief, casual, and innocent exception applies to both continuous physical presence and continuous residence, and that's the issue here. The implementing regulations explains what should be a brief, casual, and innocent absence. And, for instance, the issue of resignation. You cannot say that because a person resigned from their job, the absence was not casual, because the implementing regulation says a casual absence is one that is of a short duration, reasonably calculated to achieve the purpose of the absence. So casual is in there. So resignation cannot by itself strip that off. What case says that? That's the implementing regulations, the Code of Federal Regulations. It says that resignation from your job cannot be deemed as casual. No. Yes, that's what I'm asking. What authority do you have to support that argument? Not the case. I'm saying that the implementing regulation tells us what is casual, and so we cannot infer that resignation strips that off. Why don't we give our deference on the interpretation of that regulation to the BIA? Because it's not reasonable, Your Honor. We have cases. My time is up. You can finish. If you don't mind, I'll answer that and just conclude. It's not reasonable, Your Honor. An absence for 111 days to care for a dying parent is, I would say, a sick parent who eventually died. It's not unreasonable. Because we have a case, INS v. Dale Rivera, where the respondent or the petitioner in that case was absent for 120 days, which was more than ours, and the court still found that her absence was brief, casual, and innocent. So in this case, we are asking that this honorable court also find the petitioner's absence was brief, casual, and innocent. And we're also respectfully requesting that the court reverse the erroneous decision of the agency. Okay. Thank you very much. Thank you from all the counsel. The case is now under submission, and we're going to take a brief recess for 10 minutes.